Nos. 24-2044, 24-2045

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

REPUBLICAN NATIONAL COMMITTEE, NORTH CAROLINA REPUBLICAN PARTY,
*Plaintiffs-Appellees*,

*v.*

NORTH CAROLINA STATE BOARD OF ELECTIONS, KAREN BRINSON BELL, ALAN HIRSCH, JEFF CARMON, STACY EGGERS IV, KEVIN N. LEWIS, SIOBHAN O'DUFFY MILLEN,

*Defendants-Appellants*,

DEMOCRATIC NATIONAL COMMITTEE,
*Intervenor-Defendant-Appellant*.

On Appeal from the United States District Court
for the Eastern District of North Carolina, No. 5:24-cv-00547 (Myers, C.J.)

**REPLY IN SUPPORT OF (1) MOTION OF THE DEMOCRATIC NATIONAL COMMITTEE TO STAY REMAND ORDER PENDING APPEAL, AND (2) REQUEST FOR AN IMMEDIATE ADMINISTRATIVE STAY PENDING RULING ON STAY MOTION
(<u>ACTION REQUESTED BEFORE OCTOBER 22, 2024</u>)**

JIM W. PHILLIPS, JR.
SHANA L. FULTON
ERIC M. DAVID
WILLIAM A. ROBERTSON
JAMES W. WHALEN
BROOKS, PIERCE, MCLENDON
   HUMPHREY & LEONARD, LLP
150 Fayetteville Street
1700 Wells Fargo Capital Center
Raleigh, N.C. 27601
(919) 839-0300

SETH P. WAXMAN
DANIEL S. VOLCHOK
CHRISTOPHER E. BABBITT
GARY M. FOX
JOSEPH M. MEYER
JANE E. KESSNER
NITISHA BARONIA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
seth.waxman@wilmerhale.com

October 21, 2024

# ARGUMENT

The Democratic National Committee ("DNC") has shown that a stay pending appeal from this Court is warranted, as is an immediate administrative stay. The DNC is likely to succeed on the merits of its appeal because the district court had jurisdiction over the second count in plaintiffs' complaint, and at a minimum should have exercised supplemental jurisdiction over that claim. The DNC has also shown that—given that the election is already underway—the DNC will be irreparably injured absent a stay; plaintiffs will not be substantially harmed by a stay; and a stay is in the public interest. Finally, the DNC has shown that moving first in the district court was impracticable.

## I. THE DNC IS LIKELY TO SUCCEED ON THE MERITS

The DNC will likely succeed in showing that the district court erred when it declined to exercise jurisdiction over plaintiffs' second count. Nothing in plaintiffs' opposition shows otherwise.

A. The district court had original jurisdiction over count two under 28 U.S.C. §1441(a) for the same reasons it had original jurisdiction over count one: Count two turns entirely on a violation of HAVA, just as count one did. Indeed, the district court stated that "the DNC persuasively argued that Count 2 involves the same disputed issues pertaining to HAVA as Count One." Op.17 n.2. And it recognized (Op.31) that Congress has barred private parties from suing for the

1

violation of HAVA on which both counts turn. "The lack of a private right of action in" the federal law "is fatal" and requires dismissal of *both* counts. *See Bauer v. Elrich*, 8 F.4th 291, 299 (4th Cir. 2021). That is because when a law "does not authorize private enforcement," plaintiffs cannot "circumvent[]" that "legislative decision" … by invo[king]" state law in state court. *Id.* at 295.

Plaintiffs' effort to downplay the central federal issue in their complaint is unpersuasive. Plaintiffs imply (Opp.14) that their state constitutional claim does not necessarily raise a federal issue, but given that their entire complaint turns on HAVA's voter-registration requirements, plaintiffs never offer a legal theory that gets them around federal law. Plaintiffs baldly assert (Opp.14) that "whether 225,000 persons should have been registered … is a separate, but related, issue to HAVA," but that makes no sense when their own complaint alleges that the registrations were improper *for failing to comply with HAVA*. Plaintiffs also argue (Opp.15) that any federal question is not substantial because HAVA refers to state law. But even if HAVA recognizes that state law will operate alongside HAVA and other federal law, the substantial federal question here is whether *HAVA* requires or permits de-registration of voters or provisional voting based on alleged deficiencies in the collection of voter-registration information. Contrary to plaintiffs' protestations (Opp.15), that issue is the crux of the parties' dispute, even if plaintiffs attempt to disguise it as one about the state constitution.

Plaintiffs also repeat the mantra that a state court should decide a state constitutional question. *E.g.*, Opp.13. But they never actually identify an issue under the North Carolina Constitution that needs to be resolved. The closest they get (Opp.12) is vaguely referring to the State Board purportedly violating "Article I, Section 19 of the North Carolina Constitution by diluting the votes of eligible voters." Plaintiffs do not further explain any connection between vote dilution and the State Board's alleged failure to follow federally mandated information-collection procedures during voter registration. And even if plaintiffs had articulated an issue regarding vote dilution, there is no open question of state constitutional law for a state court to resolve: The North Carolina Supreme Court squarely rejected vote-dilution claims just last year. *Harper v. Hall*, 886 S.E.2d 393, 440 (N.C. 2023).

For largely the same reasons, plaintiffs' defense (Opp.13-14) of the district court's concern that its consideration of count two "would fundamentally disrupt the 'federal-state balance,'" Op.17 (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)), falls flat. *See* Mot.6-7. To the contrary, *remand* would disrupt the proper federal-state balance, because "Congress intended for federal courts to resolve core questions of statutory interpretation" as to HAVA, Op.17 n.2. If a removed complaint "contains a single theory of liability, namely, that" defendants have violated a federal law, exercising jurisdiction over that "core" federal claim does

3

not "undermine state courts[]" or otherwise "disrupt the 'congressionally approved balance of federal and state judicial responsibilities.'" *Bauer*, 8 F.4th at 297 (quoting *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005)). Again, plaintiffs are not asking the court to interpret the state constitution, but to answer a *federal* question: whether HAVA requires voters to be removed from the rolls (or made to vote provisionally) even this close to election day. Because Congress barred private parties from raising that question, the proper remedy is dismissal, not remand. *Id.* at 296.

B. Contrary to plaintiffs' arguments (Opp.16), the district court erred in declining to find federal jurisdiction over count two under 28 U.S.C. §1443. As explained (Mot.8-10), this case involves that State Board's "refus[al]" to remove registered voters from the rolls or make them vote provisionally because (among other reasons) that would be "inconsistent with … a law providing for the equal civil rights of citizens of the United States," namely, the National Voter Registration Act ("NVRA"). Plaintiffs try to defend (Opp.16) the district court's invented rule that courts have jurisdiction under §1443 only where the specific section of the civil-rights law invoked (here, the NVRA's 90-day removal ban) states the statute's racial-equality purpose. *See* Op.37, 39. But they cite no case supporting a rule so incompatible with *State of Georgia v. Rachel*, 384 U.S. 780 (1966), which held that "the Civil Rights Act" as a whole—not any specific

provision within it—is "clearly a law conferring a specific right of racial equality" because its lead provision (not every single provision) refers to "discrimination on the ground of race." *Id.* at 792-793. This Court, too, has assessed section 1443's applicability by reference to the law invoked (there, Title IX) as a whole, not by isolating its provisions. *See Vlaming v. West Point School Board*, 10 F.4th 300, 309 (4th Cir. 2021). Plaintiffs offer no response.

Plaintiffs next claim (Opp.17-18) that the NVRA's statement that it protects "'various groups, including *racial minorities*'" (quoting 52 U.S.C. §20501(a)(3)) (emphasis added), refers to "many groups" and so cannot satisfy *Rachel*'s requirement that the law invoked "provid[e] for specific civil rights stated in terms of racial equality," 384 U.S. at 792. But nothing in *Rachel* bars removal pursuant to laws that specifically address both racial equality *and* other forms of equality. *Rachel* and *Vlaming* simply held that when a law contains *no* reference to racial equality (such as the First and Fourteenth Amendments discussed in *Rachel*, 384 U.S. at 792, and the sex-equality law at issue in *Vlaming*, 10 F.4th at 309), it cannot justify removal pursuant to section 1443. Plaintiffs' argument that there is "no law" the Board is refusing to enforce (Opp.19) belies their own allegation that North Carolina law requires the state to purge voters from the rolls or require them to vote by provisional ballot within 90 days of the election.

The district court thus had original jurisdiction over both counts of plaintiffs' complaint under §1441 and §1443, and remanding count two violated its obligation to exercise that jurisdiction.

C. Even if the district court had discretion to remand count two after dismissing count one, it erred in declining to exercise supplemental jurisdiction over that second count. As the DNC argued below, *see* ECF 49 at 9, and has argued again here, Mot.10, plaintiffs forfeited any contrary argument. Yet plaintiffs' opposition (at 22-24) makes no mention of this reason for finding an abuse of discretion.[1]

Plaintiffs instead (Opp.22) largely repeat their argument (addressed above) that the court lacked original jurisdiction over count two. Plaintiffs also *recite* (Opp.21) but never *apply* the specific factors courts must consider when deciding whether to exercise supplemental jurisdiction as a matter of discretion. Applying those factors shows that instead of promoting (1) "convenience and fairness to both parties" and (2) "the interests of judicial economy," *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995), a remand of count two—substantively identical to count one—sends the parties back where they started, as they will have to relitigate what HAVA requires in state court. Indeed, the district court (and plaintiffs, *see*

---

[1] As in the DNC's motion, ECF citations refer to the district court's docket.

6

Opp.22-24) have not even mentioned, let alone "account[ed] for[,] the amount of time and energy that has already been expended" on the near-identical claim in count one, *Shanaghan*, 58 F.3d at 112. Having heard the motion and independently evaluated the record, Op.1, 20, the district court—not the North Carolina superior court—is positioned to efficiently address count two.

## II. THE REMAINING FACTORS ALL FAVOR A STAY

While a stay would be warranted even if the other factors did not support one, each one does.

### A. The DNC Will Be Irreparably Harmed Without A Stay

Absent a stay, the DNC will suffer irreparable harm. For one, it will effectively lose its statutory right—under 28 U.S.C. §§1291 and 1447(d)—to appeal the district court's remand order. *See* Mot.11-12; *see also e.g.*, *Northrop Grumman Technical Services, Inc. v. DynCorp International LLC*, 2016 WL 3346349, at *3 (E.D. Va. June 16, 2016). That is why courts frequently grant stays pending appeals of remand orders when an appeal is statutorily authorized. *See* Mot. 12. Moreover, if the state court proceeds while this appeal is pending and this Court does not expedite, the superior court could enter final judgment before this appeal is resolved. Regardless, if this Court eventually reverses the remand order, the federal and state courts will need to figure out what to do with whatever state-court proceedings have occurred, creating a "rat's nest of comity and

7

federalism issues." *Northrop Grumman*, 2016 WL 3346349, at *4; *see also Bryan v. BellSouth Communications, Inc.*, 492 F.3d 231 (4th Cir. 2007).

Plaintiffs never address the DNC's irreparable-harm arguments; they do not even *mention* the cases cited by the DNC and the State Board. Their only response (Opp.24-25) is that a stay would irreparably harm *plaintiffs* by, they assert, precluding relief prior to the election which would somehow cause disenfranchisement due to "vote dilution caused by ineligible voters," Opp.25. As mentioned, that vote-dilution theory fails. And as explained below, a stay will not injure plaintiffs, irreparably or otherwise.

**B.    A Stay Will Not Substantially Injure The Other Parties**

Contrary to plaintiffs' assertions (Opp.24-25), a stay will not substantially injure them. As explained (Mot.13), because the core issue here is federal, granting a stay pending appeal will conserve both parties' resources and make plaintiffs *more* likely to receive a swift resolution of their surviving claim. The court below is fully familiar with the merits of the motion to dismiss; it issued a 44-page opinion on the date of oral argument, only days after the close of briefing. Even if this Court eventually affirms the remand order, the only harm plaintiffs can claim is a brief delay in the resolution of count two. Plaintiffs assert that the stay will "preclude Plaintiffs from effective relief prior to the election," Opp.25, but they provide no authority or logic to support that assertion. To the contrary,

expedited review (which defendants have requested and which the DNC supports) will virtually eliminate any delay in resuming state-court proceedings. Regardless, delayed adjudication of plaintiffs' remaining claim is not sufficient harm to deny a stay, and "pales in comparison to the potential harm … if no stay is issued," *Northrop Grumman*, 2016 WL 3346349, at *4. That is especially true here because (as explained above) plaintiffs' remaining claim is so weak.

### C. The Public Interest Favors A Stay

Plaintiffs are also wrong (Opp.26-27) that the public interest counsels against a stay. A stay would (1) prevent the superior court from proceeding on a claim that should be heard in federal court, which could result in an order that would irreparably disenfranchise voters; and (2) conserve judicial resources by avoiding potentially duplicative litigation in state and federal courts. Mot.13-14.

Plaintiffs assert that the "public interest is best served by allowing the state court to resolve these urgent election-related state constitutional issues without delay" because (a) federalism is important and (b) the DNC's appeal of a "procedural issue" should not prevent resolution of their count two until after the election. Opp.26. But both responses rest on false assumptions: that plaintiffs are right on the merits (which, as explained, they are not) and that staying the remand order will prevent prompt resolution of count two (indeed, it would lead to further delay if this Court reverses the remand order). Moreover, the question of whether

this case belongs in state or federal court is not merely a minor "procedural issue," as this briefing shows. In sum, the public interest overwhelmingly favors a stay.

**III.  IT WAS NOT PRACTICABLE FOR THE DNC TO ASK THE DISTRICT COURT FOR A STAY PENDING APPEAL**

Plaintiffs devote several pages (Opp.6-10) to arguing that the DNC's (and State Board's) stay motions were "procedurally defective" because the DNC and State Board did not first ask the district court for a stay pending appeal. But as explained (Mot.14-15), the DNC was entitled to seek a stay in this court because "moving first in the district court would be impracticable," Fed. R. App. P. 8(a)(2)(A)(i). For one, the DNC—like the State Board—reasonably understood the district court's temporary stay until October 22 to indicate that it would not stay its order any longer.

Regardless, seeking relief first in the district court would have seriously risked delaying resolution of the stay request until the current stay had expired, especially because, given the timing of the court's decision, appellants had no choice but to file the stay motion immediately before a weekend. Plaintiffs suggest (Opp.10) that the DNC deliberately "waited until the end of the day on October 18" instead of "immediately moving for a modification of the [remand] order" issued on October 17. But the DNC could not have sought a stay pending appeal from this Court "immediately" because it needed time to draft its stay motion and had to wait for the appeals to be docketed. Even if the DNC had filed a motion in

district court, moreover, the DNC could not have reasonably filed that motion until Friday, October 18—making it likely that the district court would not have acted on it until today or tomorrow (when the current stay expires). That would have left this Court with effectively no time to enter a stay before the remand order is executed. Mot.14-15.

Plaintiffs also argue (Opp.10) that the DNC's stay motion is not properly before the Court because the DNC did not seek a stay from the district court. But as plaintiffs acknowledge, Rule 8 requires only that appellants seeking a stay show *either* that moving first in the district court would have been impracticable *or* that the district court already denied their stay request. Fed. R. App. P. 8(a)(2)(A). The DNC did the former.

Finally, if the Court requires the DNC to go back to the district court at this point, a stay before the current stay expires is exceptionally unlikely. This Court should act without delay.

## CONCLUSION

The Court should stay the district court's remand order pending appeal, and immediately enter an administrative stay during the pendency of this motion.

October 21, 2024                     Respectfully submitted,

/s/ Seth P. Waxman

| | |
|---|---|
| JIM W. PHILLIPS, JR. | SETH P. WAXMAN |
| SHANA L. FULTON | DANIEL S. VOLCHOK |
| ERIC M. DAVID | CHRISTOPHER E. BABBITT |
| WILLIAM A. ROBERTSON | GARY M. FOX |
| JAMES W. WHALEN | JOSEPH M. MEYER |
| BROOKS, PIERCE, MCLENDON | JANE E. KESSNER |
|    HUMPHREY & LEONARD, LLP | NITISHA BARONIA |
| 150 Fayetteville Street | WILMER CUTLER PICKERING |
| 1700 Wells Fargo Capital Center |    HALE AND DORR LLP |
| Raleigh, N.C. 27601 | 2100 Pennsylvania Avenue N.W. |
| (919) 839-0300 | Washington, D.C. 20037 |
| | (202) 663-6000 |
| | seth.waxman@wilmerhale.com |

# CERTIFICATE OF COMPLIANCE

The foregoing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the foregoing contains 2,580 words, excluding the portions exempted by Rule 32(f).

/s/ Seth P. Waxman
SETH P. WAXMAN

# CERTIFICATE OF SERVICE

On this 21st day of October, 2024, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ Seth P. Waxman
SETH P. WAXMAN