# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

REPUBLICAN NATIONAL COMMITTEE, NORTH CAROLINA REPUBLICAN PARTY,
*Plaintiffs-Appellees,*

*v.*

NORTH CAROLINA STATE BOARD OF ELECTIONS, KAREN BRINSON BELL, ALAN HIRSCH, JEFF CARMON, STACY EGGERS IV, KEVIN N. LEWIS, SIOBHAN O'DUFFY MILLEN,
*Defendants-Appellants,*

DEMOCRATIC NATIONAL COMMITTEE,
*Intervenor-Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of North Carolina, No. 5:24-cv-00547 (Myers, C.J.)

## DEMOCRATIC NATIONAL COMMITTEE'S OPENING BRIEF

JIM W. PHILLIPS, JR.
SHANA L. FULTON
ERIC M. DAVID
WILLIAM A. ROBERTSON
JAMES W. WHALEN
BROOKS, PIERCE, MCLENDON
   HUMPHREY & LEONARD, LLP
150 Fayetteville Street
1700 Wells Fargo Capitol Center
Raleigh, N.C. 27601
(919) 839-0300

October 23, 2024

SETH P. WAXMAN
DANIEL S. VOLCHOK
CHRISTOPHER E. BABBITT
GARY M. FOX
JOSEPH M. MEYER
JANE E. KESSNER
NITISHA BARONIA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
(202) 663-6000
seth.waxman@wilmerhale.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................. 1

JURISDICTION .................................................................................... 3

ISSUES PRESENTED ........................................................................... 5

STATEMENT ........................................................................................ 5

    A.    Registration And First-Time Voting Requirements .............................. 5

    B.    Prohibition Of Systematic Removals Of Voters From The Rolls Within 90 Days Of A Federal Election ................................................. 7

    C.    Litigation Over North Carolina's Prior Voter-Registration Form ........ 8

    D.    This Litigation ..................................................................................... 9

SUMMARY OF ARGUMENT ............................................................. 13

LEGAL STANDARDS ........................................................................ 16

ARGUMENT ....................................................................................... 16

I.    THIS COURT HAS JURISDICTION TO REVIEW WHETHER THE DISTRICT COURT HAD ORIGINAL JURISDICTION OVER COUNT TWO .............................. 16

II.    THE DISTRICT COURT ERRED IN REMANDING COUNT TWO ........................... 18

    A.    The District Court Had Original Jurisdiction Over Count Two Under 28 U.S.C. §1331 .................................................................... 18

        1.    Count two necessarily raises a federal question ....................... 19

        2.    Count two's federal issue is actually disputed ......................... 22

        3.    Count two's federal issue is substantial .................................... 23

        4.    Resolving count two in federal court would not disrupt the proper federal-state balance ................................................. 24

    B.    The District Court Has Original Jurisdiction Over Count Two Under 28 U.S.C. §1443 .................................................................... 27

    C.    At A Minimum, The District Court Should Have Exercised Supplemental Jurisdiction Over Count Two Under 28 U.S.C. §1367 .................................................................................................. 31

  1. Plaintiffs forfeited any objection to the district court's exercise of supplemental jurisdiction over count two ..............31

  2. The district court abused its discretion by declining to exercise supplemental jurisdiction over count two...................33

III. COUNT TWO SHOULD BE DISMISSED ............................................................36

CONCLUSION ........................................................................................49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page

*Acri v. Varian Associates, Inc.*, 114 F.3d 999 (9th Cir. 1997) ...............................32

*Alexander v. Sandoval*, 532 U.S. 275 (2001)...........................................37

*American Civil Rights Union v. Philadelphia City Commissioners*, 872 F.3d 175 (3d Cir. 2017) ............................................38

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ........................................45

*Andino v. Middleton*, 141 S.Ct. 9 (2020) ...............................................48

*Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014).....................30

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................39

*Batiste v. Island Records Inc.*, 179 F.3d 217 (5th Cir. 1999) .....................33, 34, 35

*Battle v. Seibels Bruce Insurance Co.*, 288 F.3d 596 (4th Cir. 2002) ....................17

*Bauer v. Elrich*, 8 F.4th 291 (4th Cir. 2021)...............................................27, 38, 39

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)...........................39, 40

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) .................................................38

*Blessing v. Freestone*, 520 U.S. 329 (1997) ...........................................12

*BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230 (2021) ...........4, 18

*Brockington v. Boykins*, 637 F.3d 503 (4th Cir. 2011) ...........................................16

*Brookshire Brothers Holding v. Dayco Products, Inc.*, 554 F.3d 595 (5th Cir. 2009) ............................................35

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008) (per curiam) .....................37

*Bryan v. BellSouth Communications, Inc.*, 377 F.3d 424 (4th Cir. 2004) ............................................16, 17, 36

*Burdick v. Takushi*, 504 U.S. 428 (1992).................................................45

*Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009)...............4, 17, 32

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988) ..................................33

*Colón-Marrero v. Vélez*, 813 F.3d 1 (1st Cir. 2016) ..................................12, 37, 38

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976)................................................................................31

*Costello v. United States*, 365 U.S. 265 (1961) ......................................................46

*Doe by Fein v. District of Columbia*, 93 F.3d 861 (D.C. Cir. 1996) .....................32

*EEOC v. Propak Logistics, Inc.*, 746 F.3d 145 (4th Cir. 2014).............................46

*Georgia v. Rachel*, 384 U.S. 780 (1966) ....................................................28, 29, 30

*Grable & Sons Metal Products, Inc. v. Darue Engineering &
   Manufacturing*, 545 U.S. 308 (2005) ....................................................19, 27

*Gunn v. Minton*, 568 U.S. 251 (2013) ...................................................19, 22, 23, 24

*Harper v. Hall*, 886 S.E.2d 393 (N.C. 2023)..............................................26, 40, 41

*Henderson v. Harmon*, 102 F.4th 242 (4th Cir. 2024) ...........................................16

*Hicks v. Ferreyra*, 965 F.3d 302 (4th Cir. 2020)....................................................33

*Jones v. Governor of Florida*, 975 F.3d 1016 (11th Cir. 2020) .............................45

*Kendall v. Balcerzak*, 650 F.3d 515 (4th Cir. 2011)..............................................44

*Ketema v. Midwest Stamping, Inc.*, 180 F.App'x 427 (4th Cir. 2006) ...................33

*Lea v. Grier*, 577 S.E.2d 411 (N.C. App. 2003) ....................................................21

*League of Women Voters of North Carolina v. North Carolina*,
   769 F.3d 224 (4th Cir. 2014) ........................................................................31

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ...........................................................44

*Mayor of City of Philadelphia v. Educational Equality League*,
   415 U.S. 605 (1974)................................................................................32

*Merrill v. Milligan*, 142 S.Ct. 879 (2022)..............................................................48

*Merrill v. People First of Alabama*, 141 S.Ct. 25 (2020)........................................48

*Montano v. City of Chicago*, 375 F.3d 593 (7th Cir. 2004)..............................33, 35

*North Carolina State Conference of NAACP v. Bipartisan Board of Elections & Ethics Enforcement*, 2018 U.S. Dist. LEXIS 134228 (M.D.N.C. Aug. 7, 2018).....................................................7

*North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016) ......................................................44

*Old Dominion Electric Cooperative v. PJM Interconnection, LLC*, 24 F.4th 271 (4th Cir. 2022) .............................................18, 19, 21

*Pender County v. Bartlett*, 649 S.E.2d 364 (N.C. 2007), *aff'd on other grounds sub nom. Bartlett v. Strickland*, 556 U.S. 1 (2009) ........................48

*Perry v. Judd*, 471 F.App'x 219 (4th Cir. 2012) ....................................47

*Pierce v. North Carolina State Board of Elections*, 97 F.4th 194 (4th Cir. 2024) ........................................................48, 49

*Powers v. United States*, 783 F.3d 570 (5th Cir. 2015) ..........................32

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam) ............................47

*Republican National Committee v. Democratic National Committee*, 589 U.S. 423 (2020) (per curiam)...............................................47

*Richer v. Fontes*, 2024 Ariz. LEXIS 263 (Ariz. Sept. 20, 2024)........................3, 46

*Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141 (4th Cir. 2018)................45

*Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) (per curiam) ..........................................38

*Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995)....................................35

*United States v. Classic*, 313 U.S. 299 (1941).......................................44

*United States v. Doe*, 962 F.3d 139 (4th Cir. 2020) ..................................3

*United States v. Florida*, 870 F.Supp.2d 1346 (N.D. Fla. 2012)............................42

*Vlaming v. West Point School Board*, 10 F.4th 300 (4th Cir. 2021) ...........28, 29, 30

*Wesberry v. Sanders*, 376 U.S. 1 (1964)....................................................44

*White v. Daniel*, 909 F.2d 99 (4th Cir. 1990) .........................................46

*Wise v. Circosta*, 978 F.3d 93 (4th Cir. 2020) (en banc)........................49

## CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Const. amend. XIV, §1 ....................................................................43

N.C. Const. art. I, §19 ......................................................................21, 26

28 U.S.C.
   §1291 ................................................................................................4
   §1331 ...........................................................3, 4, 16, 17, 18, 27
   §1367 ...........................................................................4, 31, 35
   §1441 ...................................................................2, 3, 18, 27
   §1442 ................................................................................18
   §1443 ...........................................2, 13, 18, 27, 28, 29
   §1447 ...................................................................13, 17, 18

42 U.S.C. §1983 ....................................................................................38

52 U.S.C.
   §20501 .......................................................................28, 30
   §20507 .......................................................7, 24, 28, 41, 42
   §21082 ..............................................................................6
   §21083 ........................... 5, 6, 7, 19, 20, 37, 39, 40, 43
   §21111 ............................................................................37
   §21803 ............................................................................24

N.C. Gen. Stat.
   §163-82.1 .........................................................................7
   §163-82.4 .........................................................................6
   §163-82.11 ...........................................................10, 20
   §163-85 ..........................................................................45
   §163-86 ..........................................................................45
   §163-166.12 .....................................................................6
   §163-227.10 ....................................................................47

# OTHER AUTHORITIES

Morgan, David & Andrew Goudsward, *Even Before Election, Trump, Allies Sue Over Claims That Non-Citizens Might Vote*, Reuters (Sept. 19, 2024), https://tinyurl.com/42jzdfv2 .................................................3

*North Carolina Tops 1 Million Votes Cast*, North Carolina State Board of Elections (Oct. 20, 2024), https://tinyurl.com/muaa6826 ..................3

Riccardi, Nicholas, *GOP Lawsuits Set the Stage for State Challenges if Trump Loses the Election*, AP News (Sept. 5, 2024), https://tinyurl.com/4zc9e2vu ..........................................................................3

Vento, Sophia, *Republicans Sued 3 Battleground States This Week. Here's What You Need to Know*, The Hill (Sept. 14, 2024), https://tinyurl.com/2a93kv.............................................................................3

# INTRODUCTION

Less than three months before election day (and less than that before early voting began), the Republican National Committee and the North Carolina Republican Party asked the North Carolina superior court to purge up to 225,000 registered North Carolinians from the voter rolls or force them to cast provisional ballots that are presumptively not counted—without providing them any notice or opportunity to be heard—even though these voters filled out the state's voter-registration form, had their applications (and their eligibility to vote) verified by election officials, and have brought or will soon bring identification to the polls (as state and federal law require). Plaintiffs seek this mass disenfranchisement of voters they deem "potentially ineligible," moreover, based exclusively on a *federal* law's data-collection requirement rather than any particular voters' eligibility to vote. And the relief they seek would violate that very same federal law.

Defendants removed the case, and the district court correctly held that both counts of plaintiffs' complaint assert the same claim under the federal Help America Vote Act ("HAVA"), the relevant provisions of which plaintiffs lack any private right of action to enforce. Despite this, the court exercised original jurisdiction over only one of the two counts and dismissed only that count, remanding the second count because it was nominally framed as an alleged violation of the North Carolina Constitution.

This Court has jurisdiction to hear this appeal, and it should hold that, for several reasons, the district court had jurisdiction over both counts of plaintiffs' complaint for the following reasons. First, Plaintiffs' second count (like the first, over which the district court correctly concluded it had original jurisdiction) turns *entirely* on a violation of HAVA, giving rise to jurisdiction under 28 U.S.C. §1441. Second, because plaintiffs demand that North Carolina purge voters or make them vote provisionally in violation of their federal civil rights, removal was alternatively proper under 28 U.S.C. §1443. Finally, even if the district court did not have original jurisdiction over count two, it had supplemental jurisdiction over that count (as it recognized) and abused its discretion in declining to exercise it.

The Court should also direct that count two be dismissed. Plaintiffs have no viable cause of action, and they ask for relief that would itself violate federal law—including the constitutional right to due process and a statutory ban on systematically removing voters from the rolls shortly before any federal election. They also have yet to identify a single person whose eligibility the State Board has not confirmed or who is otherwise not eligible to vote. And their last-minute claim is barred by laches as well as the Supreme Court's *Purcell* doctrine. Indeed, like many other lawsuits filed in Michigan, Wisconsin, Pennsylvania, Arizona, and Nevada, this lawsuit is so marred with defects that it is best understood as an effort

simply to sow doubt about the integrity of North Carolina's elections, in which over 1 million votes have already been cast.[1]

In short, the Court should reverse the district court's remand of count two and instruct that count two instead be dismissed with prejudice. At a minimum, this Court should instruct the district court to consider the multiple arguments made by the North Carolina State Board of Elections ("State Board") and the Democratic National Committee ("DNC") for dismissal. This Court should act swiftly so that the election can proceed without the specter of doubt plaintiffs evidently seek to cast over it.

## JURISDICTION

As further explained below, the State Board properly removed this case to the district court under 28 U.S.C. §§1441(a) and 1443(2). *See generally* JA7. That court had original jurisdiction over both counts of plaintiffs' complaint under 28

---

[1] *E.g.,* Vento, *Republicans Sued 3 Battleground States This Week. Here's What You Need to Know*, The Hill (Sept. 14, 2024), https://tinyurl.com/2a93kv; Morgan & Goudsward, *Even Before Election, Trump, Allies Sue Over Claims That Non-Citizens Might Vote*, Reuters (Sept. 19, 2024), https://tinyurl.com/42jzdfv2; Riccardi, *GOP Lawsuits Set the Stage for State Challenges if Trump Loses the Election*, AP News (Sept. 5, 2024), https://tinyurl.com/4zc9e2vu; *North Carolina Tops 1 Million Votes Cast*, North Carolina State Board of Elections (Oct. 20, 2024), https://tinyurl.com/muaa6826. As explained below, in at least one other case, the Republican Party has opposed a mass de-registration of voters of the kind they seek here (and the court ruled such de-registration was not appropriate). *Richer v. Fontes*, 2024 Ariz. LEXIS 263, at *1 (Ariz. Sept. 20, 2024). This Court "may take judicial notice" of these and other "facts that are generally known." *United States v. Doe*, 962 F.3d 139, 147 n.6 (4th Cir. 2020).

U.S.C. §1331.  JA8.  In the alternative, the district court had original jurisdiction over count one under 28 U.S.C. §1331 and supplemental jurisdiction over count two under 28 U.S.C. §1367(a).

On October 17, 2024, the district court entered an order dismissing count one of plaintiffs' complaint and remanding count two to state court.  JA559.  That same day, the district court entered judgment to the same effect.  JA603.  Both the State Board and the DNC filed timely notices of appeal on October 18.  JA675; JA678.

This Court has jurisdiction under 28 U.S.C. §1291(a), both because appellate jurisdiction lies over a district-court order remanding a state-law claim based on a decision not to exercise supplemental jurisdiction, *see Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638-641 (2009), and because appellate jurisdiction lies when, as here, the civil-rights removal statute has been invoked, *see BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 234 (2021).

The district court stayed its own remand order until October 22.  JA602. This Court entered an administrative stay until noon on October 25, ECF No. 31, which was extended to 11:59 p.m. on October 28, ECF No. 40.[2]

---

[2] ECF citations are to the DNC's appeal in No. 24-2045 unless otherwise noted.

## ISSUES PRESENTED

1.  Whether this Court has jurisdiction to hear an appeal from the district court's remand order.

2.  Whether the district court erred by remanding count two of plaintiffs' complaint.

3.  Whether count two should be dismissed for failure to state a claim.

## STATEMENT

### A.  Registration And First-Time Voting Requirements

Federal and North Carolina law each impose requirements for voter registration, voting, and maintenance of the voter rolls.

Under HAVA, an application to register to vote in federal elections cannot "be accepted or processed by a State unless" it includes "the applicant's driver's license number" or (if the applicant lacks a valid driver's license) "the last 4 digits of the applicant's social security number."  52 U.S.C. §21083(a)(5)(A)(i).  But if an applicant has neither number, then "the State shall assign the applicant a number which will serve to identify the applicant for voter registration purposes."  *Id.* §21083(a)(5)(A)(ii).  Once an applicant completes a registration form, "[t]he State shall determine whether the information provided by" the applicant "is sufficient to meet the requirements" outlined in HAVA, "in accordance with State law."  *Id.* §21083(a)(5)(A)(iii).

HAVA imposes additional requirements on applicants who register by mail without providing either a driver's license number or the last four digits of their social security number. Such a registrant must either present a photo ID or another identifying document to vote in *person* in their first federal election, or submit a copy of their photo ID or identifying document to vote in their first federal election by *mail*. 52 U.S.C. §21083(b)(1)-(3). Voters who do not do so may cast only provisional ballots, *id.* §21083(b)(2)(B), which are not counted unless election officials later determine the voters are "eligible under State law to vote," *id.* §21082(a)(4).

Consistent with HAVA's command that states "shall implement" its provisions, 52 U.S.C. §21083(a)(1)(A), North Carolina law requires compliance with many of the HAVA requirements just discussed, such as the requirement that a first-time voter who registered by mail present identification. N.C. Gen. Stat. §163-166.12(a), (b); *see also* JA412. Those who do not present or submit identification are permitted to cast only provisional ballots. *Id.* §163-166.12(e). North Carolina's registration form also confirms registrants' citizenship. People who register using the North Carolina registration form confirm their U.S. citizenship by checking the appropriate box for the question asking if the applicant is "a citizen of the United States." JA415; *see also* N.C. Gen. Stat. §163-82.4(e). If the applicant is not a U.S. citizen, the form instructs her "not [to] submit this

form" because she is "not qualified to vote." JA415. At the bottom of the form, the applicant must include her signature, which confirms that she has "reviewed the contents of [the] form" and attests that she is "a U.S. citizen." JA415. The form is clear that "[f]raudulently or falsely completing" it "is a Class I felony" under state law. JA415.

### B. Prohibition Of Systematic Removals Of Voters From The Rolls Within 90 Days Of A Federal Election

Federal law requires most states to (1) maintain a single authoritative list of voters registered in the state, and (2) conduct "list maintenance" to remove ineligible individuals from the rolls. 52 U.S.C. §21083(a). Under the National Voter Registration Act ("NVRA"), voters may be removed from the rolls at their request or because of change in residence, criminal conviction, mental incapacity, or death. *Id.* §20507(a)(3), (4). North Carolina law provides for removal from the voter rolls for largely the same reasons. *See* N.C. Gen. Stat. §163-82.1(c).

At the same time, federal law sharply limits states' ability to remove voters from the rolls shortly before any federal election, providing that states "shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. §20507(c)(2)(A) (emphasis added); *see also, e.g.*, *North Carolina State Conference of NAACP v. Bipartisan Board of Elections & Ethics Enforcement*, 2018 U.S. Dist.

LEXIS 134228, at *15-29 (M.D.N.C. Aug. 7, 2018) (applying the NVRA's 90-day removal ban).

### C.    Litigation Over North Carolina's Prior Voter-Registration Form

On October 6, 2023, North Carolina resident Carol Snow filed an administrative complaint with the State Board.  JA32.  The complaint challenged a prior version of North Carolina's voter-registration form, alleging that the prior version did "not clearly indicate[]" that "the applicant's driver's license number or last 4 digits of the applicant's social security number[] are [sic] required if one or the other ha[s] been issued to the applicant."  JA420; JA426.

After holding a public meeting in November 2023, during which the administrative complaint was discussed, the State Board issued a written order in December 2023 resolving the complaint by declining to grant the relief requested by plaintiffs here.  JA33.  That same month, the board addressed the substance of the complaint by updating North Carolina's voter-registration form to remove any doubt: (1) that an applicant with a North Carolina driver's license or DMV ID number must provide that number, (2) that an applicant without a number from the DMV must provide the last four digits of her social security number, and (3) that an applicant without any of those numbers must indicate that fact on the form. *See* JA33.

Despite these revisions, Ms. Snow raised similar complaints about the form during public meetings of the State Board in March and April 2024.  JA34.  Having already updated the form (as just discussed) and declined her requests for further action, the board denied her renewed requests for further action.  JA34.

### D.    This Litigation

On August 23, 2024—months after the events just discussed, and with fewer than 90 days until election day—plaintiffs filed this action in North Carolina superior court.  *See* JA22.  Plaintiffs' lawsuit relates to the (prior) version of North Carolina's voter-registration form that was challenged in the October 2023 administrative complaint.  Specifically, plaintiffs allege that, for an unspecified period of time "[p]rior to December 2023," the State Board "used voter registration forms that failed to collect" driver's license and social security numbers.  JA30.  As the prior version of the form itself shows, however, item #3 contained fields for that information:



JA426 (yellow highlighting added).  The instructions for the prior version of the form, moreover, directed registrants to provide either a driver's license number or the last four digits of a social security number:

> **3** You are required to provide your date of birth. If you have a NC driver license or non-operator's identification number, provide this number. If you do not have a NC driver license or ID card, then provide the last four digits of your social security number. If you have neither a NC driver license, NC DMV ID card or a social security number and you are registering to vote for the first time in North Carolina, attach a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows your name and address to this application.

JA427 (yellow highlighting added).

Plaintiffs allege that the State Board, its members, and its executive director committed "a plain violation of Section 303 of the Help America Vote Act," and further allege that "because of" that violation, North Carolina's voter rolls "potentially" include ineligible voters.  JA23.

More specifically, count one of the complaint, which has now been dismissed with prejudice, *see* JA602, sought a writ of mandamus to address an alleged violation of North Carolina General Statutes §163-82.11(c), which requires the State Board to maintain North Carolina's voter rolls in compliance with HAVA.  JA38-39.  Count two (the subject of this appeal) seeks a mandatory injunction to redress an alleged violation of the North Carolina Constitution based on the same purported violation as count one (i.e., the State Board's supposed failure to comply with HAVA and its implementing state statute).  JA39.

Plaintiffs requested "a court-approved plan" under which "ineligible registrants" will be "remov[ed] … from the state's voter registration lists."  JA40.

If "removal is not feasible," the complaint states, then plaintiffs seek a court order requiring "all individuals who failed to provide necessary HAVA identification information but were still registered to vote under the state's prior registration form[] to cast a provisional ballot in the upcoming elections pending" the State Board's "receipt and confirmation of the required HAVA information."  JA40-41.

The DNC intervened in superior court and filed a motion to dismiss, answer, and affirmative defenses.  JA123; JA126.  The State Board subsequently removed the case, JA7, and then moved to dismiss both counts of plaintiffs' complaint for failure to state a claim.  JA307; JA310.  The DNC filed a response supporting dismissal.  JA374.

Over a week after removal, plaintiffs filed an "emergency" motion to remand to the superior court, JA357, which the State Board and DNC opposed, JA472; JA501.  On October 17—the day early voting began in North Carolina—the district court held a hearing on the motions to remand and dismiss, and it issued an opinion later that day resolving them.  JA559; JA602.

The district court rejected plaintiffs' argument that removal of both claims had been improper, concluding that it had original jurisdiction over count one and supplemental jurisdiction over count two.  JA560.  It thus denied plaintiffs' emergency remand motion in full.  JA602.

also dismissed count one with prejudice, concluding that plaintiffs lacked a private right of action to press their claim that the State Board violated HAVA "by failing to collect" the driver's license or social security numbers HAVA requires and "refusing 'to maintain accurate voters rolls.'"  JA577 (quoting complaint); JA584-589; JA597-600.  HAVA, the court found, "'by its terms does not create a private right of action,'" JA584 (quoting *Colón-Marrero v. Velez*, 813 F.3d 1, 15 (1st Cir. 2016)), and that it also created no *implied* right of action because its list-maintenance requirements "'are designed only to guide the State,'" not to confer a right on any individual class of beneficiaries, JA586-587 (quoting *Blessing v. Freestone*, 520 U.S. 329, 344 (1997)).  The court also found that the North Carolina statute implementing HAVA did not provide a private right of action, either.  JA598.

But having dismissed count one, the district court "decline[d] to exercise supplemental jurisdiction over Count Two," the state constitutional claim, and remanded it.  JA602 (quotation marks omitted).  Count two, the court ruled, "raised a 'novel' issue of North Carolina law," namely, "whether the State's noncompliance with state and federal election law can give rise to state constitutional injury."  JA601.  In the court's view, it would disrupt the federal-state balance for the federal courts to resolve a claim about the state constitution.

# SUMMARY OF ARGUMENT

I.      On two independent bases, this Court has jurisdiction to consider whether the district court had original jurisdiction over count two.

First, case law from the Supreme Court and this Court is clear that a district court's order remanding a state-law claim based on a decision not to exercise supplemental jurisdiction is an appealable order.  In reviewing such an order, the Court may also consider whether the district court had original jurisdiction over the claim.

Second, as the Supreme Court has recently clarified, 28 U.S.C. §1447(d) gives courts of appeals jurisdiction to review *any* issue in a district court's order remanding a case to state court where removal was premised in part on 28 U.S.C. §1443, as it was here.

II.      This Court should reverse the district court's remand order in relevant part because the district court had jurisdiction over count two on three independent bases.

First, original jurisdiction lies over count two for the same reason it lay (as the district court concluded) over count one:  Count two turns entirely on a violation of HAVA and so arises under federal law.  That federal issue is necessarily raised, disputed, and substantial.  And adjudicating count two in federal court would not disrupt the federal-state balance because Congress, far from

intending to close the federal courthouse doors to such claims, expected federal issues like the proper interpretation of HAVA to be decided in federal court.

Second, count two was properly removed to federal court under the civil-rights removal statute. That statute allows state officers to remove any lawsuit against them in which (1) the plaintiff challenges the officers' refusal to take some action and (2) the officers claim they refused to take the action because doing so would contravene a law providing for equal rights (here, the NVRA). No authority supports the district court's novel and cramped understanding of the civil-rights removal statute that requires an equal-rights law to repeat explicitly in every provision its purpose to ensure racial equality.

Third, the district court abused its discretion when it failed to exercise supplemental jurisdiction over count two. Its focus on count two's state-constitutional label should not have outweighed the fairness and judicial economy that exercising supplemental jurisdiction would promote in a case the court itself acknowledged turned on a single federal question.

III.    The district court erred in failing to dismiss count two, and this Court should order that it do so promptly.

Count two should be dismissed, first for the same reason the district court dismissed count one: Plaintiffs lack a private right of action to claim a violation of HAVA's information-collection provisions.

Second, plaintiffs' request to systematically remove up to 225,000 voters from the rolls or make them cast only provisional ballots shortly before the upcoming election is explicitly prohibited by federal law: HAVA and the NVRA each bar such removals within 90 days of a federal election or mass removals that otherwise risk erroneously de-registering eligible voters, and removal without notice and an opportunity to be heard would violate voters' constitutional right to due process.

Third, plaintiffs' complaint fails to state a claim because they do not allege a violation of HAVA or the state constitution, neither of which requires the removal of voters who are eligible to vote but did not provide certain identification numbers when registering. In fact, HAVA and the state constitution each *prohibits* such removal.

Finally, the district court should have dismissed count two both under the doctrine of laches, because plaintiffs inexcusably delayed in filing their lawsuit mere weeks before voting was set to begin, and (for the same reason) under the Supreme Court's *Purcell* line of cases, because the election is well underway, and granting the relief plaintiffs seek at this incredibly late point in time would cause election chaos, confusing voters (and likely wrongly disenfranchising them) as well as leaving election officials scrambling to implement a regime different than the one they have been preparing for months to implement.

**LEGAL STANDARDS**

"A district court's determination that it lacks subject matter jurisdiction is a question of law," which this Court "review[s] de novo." *Bryan v. BellSouth Communications, Inc.*, 377 F.3d 424, 428 (4th Cir. 2004). A "district court's decision to decline to exercise supplemental jurisdiction over state-law claims" is reviewed "for abuse of discretion." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024). And the Court "review[s] *de novo* the decision of the lower court to deny a motion to dismiss pursuant to Federal Rule 12(b)(6)," while "accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff." *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

**ARGUMENT**

I.  **THIS COURT HAS JURISDICTION TO REVIEW WHETHER THE DISTRICT COURT HAD ORIGINAL JURISDICTION OVER COUNT TWO**

This Court has appellate jurisdiction here—including on whether plaintiffs' second claim for relief presents a substantial federal question under 28 U.S.C. § 1331—on either of two independent bases.

First, this Court has jurisdiction over an appeal from the district court's decision declining to exercise supplemental jurisdiction, which is "appealable as a final order pursuant to § 1291." *Bryan*, 377 F.3d at 428. As the Supreme Court has explained, "[w]hen a district court remands claims to a state court after

declining to exercise supplemental jurisdiction, the remand order is not based on a lack of subject-matter jurisdiction." *Carlsbad*, 556 U.S. at 641. Thus, the no-appeal provision for most remand orders, 28 U.S.C. §1447(d), does not apply. *Carlsbad*, 556 U.S. at 636.

In reviewing a district court's decision not to exercise supplemental jurisdiction, this Court can consider whether the district court erred in assessing federal-question jurisdiction under 28 U.S.C. §1331. In *Battle v. Seibels Bruce Insurance Co.*, 288 F.3d 596 (4th Cir. 2002), the district court declined to exercise supplemental jurisdiction and ordered the case remanded to state court, reasoning that the remaining claims did not present a federal question under 28 U.S.C. §1331, 288 F.3d at 605-606. This Court vacated the remand order, holding that the remaining claims did present a substantial federal question, that the district court possessed subject-matter jurisdiction under section 1331, and therefore that the court erred when it remanded the remaining claims "based upon its mistaken belief that it had otherwise dismissed all claims over which it had 'original jurisdiction.'" *Id.* at 606-609. Similarly, in *Bryan*, the district court dismissed two claims but declined to exercise supplemental jurisdiction over the lone surviving claim and remanded it. 377 F.3d at 425. This Court vacated the remand order, holding that the plaintiff's state-law claim raised a substantial federal question under section 1331. *Id.* at 428-430. As in *Battle* and *Bryan*, this Court is not required to

artificially constrain its review of the district court's remand order to the issue of supplemental jurisdiction.

Second, this Court has appellate jurisdiction under 28 U.S.C. §1447(d). According to the second clause of that provision, "an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." *Id.* The Supreme Court recently clarified that a court of appeals has jurisdiction "to review any issue in a district court order remanding a case to state court where the defendant premised removal in part on" section 1443, which includes whether the district court had federal-question jurisdiction. *BP*, 593 U.S. at 234. One of the two independent bases for removal in this case was section 1443. JA575. Thus, this Court has jurisdiction to consider "the whole of" the district court's remand order. *BP*, 593 U.S. at 238.

## II. THE DISTRICT COURT ERRED IN REMANDING COUNT TWO

### A. The District Court Had Original Jurisdiction Over Count Two Under 28 U.S.C. §1331

Under 28 U.S.C. §1441(a), any case over which a federal district court would have original jurisdiction can be removed from state court. District courts have original jurisdiction over "all civil actions arising under the … laws[] … of the United States." 28 U.S.C. §1331. A civil action most commonly "arises under" federal law when the plaintiff asserts a federal cause of action. *See Old Dominion Electric Cooperative v. PJM Interconnection, LLC*, 24 F.4th 271, 279

(4th Cir. 2022).  But even when a plaintiff asserts a state-law claim, the claim "may nevertheless 'arise under' federal law and fall within the scope of federal question jurisdiction."  *Id.* at 280.  Specifically, a state-law claim "arises under" federal law for jurisdictional purposes when "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 313-314 (2005)).

Here, the district court "assume[d]" that plaintiffs' count two "necessarily raises a disputed and substantial issue of federal law," acknowledging that the State Board "and the DNC persuasively argued that Count 2 involves the same disputed issues pertaining to HAVA as Count One."  JA575.  But it concluded that the fourth *Gunn-Grable* factor weighed against federal jurisdiction—so much so that, by itself, that factor warranted remand.  That was wrong; the fourth factor, like the other three, supports original federal jurisdiction.

### 1. Count two necessarily raises a federal question

The federal question necessarily presented by count two is as follows: When election officials register a voter whose completed registration form lacked a current, valid driver's license number or the last four digits of her social security number—as required by 52 U.S.C. §21083(a)(5)(A)(i)—does the State Board's

obligation under 52 U.S.C. §21083(a)(2)(A) to "perform list maintenance with respect to the computerized [registration] list on a regular basis" require that the voter either be removed from the rolls or allowed to cast only a provisional ballot?

Count two thus necessarily raises a federal issue. Plaintiffs' theory for count two is that the State Board has "a non-discretionary, statutory duty to maintain the state's voter rolls in a manner compliant with Section 303(a) of HAVA"—a federal law—and that the State Board's acceptance of completed voter-registration forms was "non-compliant with Section 303(a) of HAVA." JA39. Moreover, count two expressly incorporates (JA39) the preceding paragraphs, which make clear that plaintiffs' fundamental theory is that defendants "violated HAVA and, *as a result*, state law." JA23 (emphasis added).

To be sure, plaintiffs also cite a state statute within count two (the same statute that forms the basis of count one). JA39. But as its title states, what that statute requires is "Compliance with *Federal* Law" (emphasis added). The statute requires the State Board to maintain North Carolina's voter rolls in a manner that "meet[s] the requirements of Section 303(a) of" HAVA. N.C. Gen. Stat. §163-82.11(c). A state statute cannot transform federal-law issues into state-law issues by stating that it requires compliance with federal law. Otherwise, states could confine every federal-question case to their courts by enacting a catch-all statute requiring "compliance with all federal laws," which a plaintiff could then invoke to

defeat removal in any federal-question case.  Plaintiffs cannot defeat removal by cloaking count two in "state garb" in this way.  *Old Dominion*, 24 F.4th at 279.

Indeed, to obtain a mandatory injunction under Article I, §19 of the North Carolina Constitution, plaintiffs must allege some "arbitrary or irrational state action."  *Lea v. Grier*, 577 S.E.2d 411, 417 (N.C. App. 2003).  But the only state action at issue is the State Board's supposed failure to comply with its "non-discretionary, statutory duty to maintain the state's voter rolls in a manner compliant with Section 303(a) of HAVA," an action that plaintiffs allege deprives them of their right to vote.  JA39.  Thus, count two necessarily raises a federal issue.

Even plaintiffs' press release about this litigation admits that their entire case is based on federal law.  The press release does not even *mention* state law, instead accusing the State Board of "violating [the] Help America Vote Act (HAVA)."  JA483.  In other words, while plaintiffs tout this case in the media as an effort to remedy purported HAVA violations, their arguments in court rest on the opposite view, i.e., that there is no federal issue here.  But given that their entire complaint turns on HAVA's requirements, plaintiffs never offer a legal theory that allows them to get around federal law.  Plaintiffs have asserted that "whether 225,000 persons should have been registered … is a separate, but related, issue to HAVA," ECF No. 21 at 14, No. 24-2044 (4th Cir.) but that is untenable given that count two

in their complaint alleges that the registrations were improper *for failing to comply with HAVA*.  JA39.

## 2.    Count two's federal issue is actually disputed

The second *Gunn-Grable* factor also supports federal jurisdiction, because the federal issue in count two is "actually disputed," 568 U.S. at 258.  Indeed, the notion that there is no such dispute is thoroughly belied by the fact that the parties briefed emergency motions for a stay pending appeal in a matter of days and are now pressing ahead with highly expedited appeals so that this Court can enter a decision before election day.  That has happened because whereas plaintiffs say the answer to the federal question (presented at the start of the prior subsection) is yes, the State Board and the DNC say the answer is no.  That is unquestionably an actual dispute.

As the district court noted (JA579), plaintiffs miss the mark by suggesting there is no dispute about the *separate* issue of whether the State Board violated HAVA in the first place.  *See* ECF No. 21 at 15, No. 24-2044 (4th Cir.).  In any event, that point is *also* disputed, given that the prior version of North Carolina's voter-registration form specifically instructed registrants to provide their driver's license numbers or partial social security numbers if they had either.  JA426-427. Moreover, federal and state law do not permit, and in fact prohibit, the relief plaintiffs seek.  *See infra* §III.

### 3. Count two's federal issue is substantial

The federal issue presented by count two is "substantial," *Gunn*, 568 U.S. at 258, as the relief plaintiffs seek could cost tens (if not hundreds) of thousands of registered North Carolinians their fundamental right to vote (and to have that vote counted) in the ongoing presidential and other elections.

Disagreeing, plaintiffs have portrayed the issue as "fact bound" and "situation specific." JA363. It is neither. Plaintiffs sought an order requiring state election officials to remove up to 225,000 registered voters from the rolls just before a federal election, based on plaintiffs' interpretation of HAVA. JA40-41. If their interpretation were correct, and if the relief they seek were permissible (i.e., not barred by federal law), that would have the potential to affect registered voters in every jurisdiction in the country.

In opposing a stay pending appeal, plaintiffs seemingly confused this *Gunn-Grable* factor with the first, arguing that any federal question is insubstantial because HAVA refers to state law. ECF No. 21 at 15, No. 24-2044 (4th Cir.). But regardless of any reference to state law in HAVA, the substantial question here is a federal one: whether *HAVA* requires or permits de-registration of voters, or mandates provisional voting, based on alleged deficiencies in the collection of voter-registration information. *See supra* §II.A.1.

### 4. Resolving count two in federal court would not disrupt the proper federal-state balance

The district court went astray in ruling that the fourth *Gunn-Grable* factor precluded original jurisdiction over count two, erroneously concluding that a federal court's consideration of that count "would fundamentally disrupt the 'federal-state balance.'" JA575 (quoting *Gunn*, 568 U.S. at 258). In *Gunn*, the Supreme Court deemed the fourth factor to cut against federal jurisdiction because states "have a special responsibility for maintaining standards among members of the licensed professions." 568 U.S. at 264 (quotation marks omitted). This case, by contrast, concerns statutes that safeguard Americans' right to vote in *federal* elections. HAVA, for example, provides that "[t]he computerized list [of voters] shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. §21803(a)(1)(A)(viii). And the quiet period in the National Voter Registration Act bans the systematic removal of voters from the rolls within the "90 days prior to … a[ny] … election for Federal office." *Id.* §20507(c)(2)(A). There is "no reason to suppose that Congress" intended to preclude federal courts from hearing litigation so centrally focused on the fundamental right to vote in federal elections. *See Gunn*, 568 U.S. at 264.

On the district court's own logic, in fact, it is a *remand* of count two that would disrupt the federal-state balance. As the court explained, "Congress intended for federal courts to resolve core questions of statutory interpretation"

regarding HAVA, and "there is no indication that Congress intended" consideration of those interpretive issues in state court "to the exclusion of federal court jurisdiction." JA591. That logic applies with equal force to count two, and the district court did not explain its seemingly contrary view. *See* JA575-577. The court's failure to follow its own logic is particularly striking given that it started its analysis for count two by noting that the count "involves the same disputed issues pertaining to HAVA as Count One." JA575.

Plaintiffs' invocation of the state constitution in their complaint does not require a different result. In terms of constitutional injury, plaintiffs at most allege a purported "chilling effect on North Carolinians' right to vote in free and fair elections." JA36-37. But even plaintiffs allege that such chilling will occur only "[i]f Defendants do not remove ineligible voters from the state's voter rolls," JA36, the action they claim HAVA mandates, *e.g.*, JA34. Put another way, the general principle that state courts should be "'left free and unfettered … in interpreting their state constitutions,'" JA38, has no application here because the claim does not turn on an interpretation of the state constitution. Rather, the complaint, on its face, raises a *federal* question: whether HAVA requires or permits voters to be systematically removed from the rolls or forced to vote only provisionally so close to the election.

Seizing on the district court's limited reasoning for the final *Gunn-Grable* factor, plaintiffs have repeated for this Court their mantra that a state court should decide a state constitutional question. *E.g.*, ECF No. 21 at 13, No. 24-2044 (4th Cir.). But again, they *never actually identify* an issue under the North Carolina Constitution that needs to be resolved. The closest they get is a vague reference to the State Board purportedly violating "Article I, Section 19 of the North Carolina Constitution by diluting the votes of eligible voters." *Id.* at 12. Plaintiffs do not further explain any connection between vote dilution and the State Board's alleged failure to follow federally mandated information-collection procedures during voter registration.

Even if plaintiffs had articulated an issue regarding vote dilution, moreover, there is no open question of state constitutional law for a state court to resolve: The North Carolina Supreme Court squarely rejected vote-dilution claims just last year, stating that under the North Carolina Constitution, "a claim of vote dilution allegedly based on one's affiliation with a political party does not raise a claim under our equal protection clause." *Harper v. Hall*, 886 S.E.2d 393, 440 (N.C. 2023). A vote-dilution claim may lie only where one individual's vote does not "have the same weight" as another's vote. *Id.* Plaintiffs do not allege that is the situation here.

As this Court has explained, when a removed complaint "contains a single theory of liability" that defendants have violated a federal law, jurisdiction over that "core" federal claim does not "undermine state courts[]" or otherwise "disrupt the 'congressionally approved balance of federal and state judicial responsibilities.'" *Bauer v. Elrich*, 8 F.4th 291, 297 (4th Cir. 2021) (quoting *Grable*, 545 U.S. at 314). That is the situation here. If plaintiffs' contrary arguments were right, the federal-state balance would be permanently disrupted because any plaintiff could shield a federal claim from review in federal court by labeling it as a violation of a state constitution. That is not and should not be the law.

The fourth factor (like each of the other three) weighs in favor of federal jurisdiction. Because count two necessarily raises a substantial, disputed issue of federal law that is suitable for adjudication in federal court, the district court had original jurisdiction over that count under 28 U.S.C. §1331. Thus, the State Board's removal of that claim was proper under 28 U.S.C. §1441(a). That provides an independent ground for this Court to hold that the district court erred by remanding count two to state court.

### B. The District Court Has Original Jurisdiction Over Count Two Under 28 U.S.C. §1443

Even if a claim does not arise under federal law, it may be removed by a defendant that "refus[ed] to do an[] act on the ground that [the act] would be

inconsistent with" the defendant's "authority derived from any law providing for equal rights." 28 U.S.C. §1443(2). This provision independently authorized removal here because plaintiffs seek relief that would force the State Board to act in a manner inconsistent with federal law enacted expressly for the purpose of protecting equal civil rights. *See* JA8-9. The district court erred in declining to find federal jurisdiction over count two on this alternative basis. This Court should correct the lower court's constrained interpretation of the civil-rights removal statute.

The Supreme Court has held that the phrase "any law providing for … equal civil rights" in §1443(1) "must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *Georgia v. Rachel*, 384 U.S. 780, 792 (1966), *quoted in Vlaming v. West Point School Board*, 10 F.4th 300, 309 (4th Cir. 2021). The NVRA is such a law. It provides for a specific civil right—the "fundamental right" to vote—and prohibits "discriminatory and unfair registration laws and procedures" that "disproportionately harm … racial minorities." 52 U.S.C. §20501(a). And the State Board "refused to" (28 U.S.C. §1443(2)) remove registered voters from the rolls or require that they cast provisional ballots "because the [NVRA] prohibits the State Board from systematically removing registered voters fewer than 90 days before an election," JA517 (citing 52 U.S.C. §20507(c)(2)(A)).

The district court acknowledged all this.  JA594.  Yet it opined (without citation) that "[t]he test is not whether Defendants refused to act on the basis of a provision of law that is contained within a larger statute that has several purposes, one of which being racial equality."   JA594.  Rather, the court interpreted section 1443's reference to "law" to mean "provision of a law," thereby adopting a new test:  The removing party must rely on a specific statutory provision *within* a law that expressly refers (the specific provision, that is) to racial equality.  And, the court concluded, the NVRA's ban on removals less than 90 days before any federal election did not meet this new test.  JA594.

There is no basis, however, for such a constrained reading of the refusal provision, which refers broadly to the "authority *derived from* any law providing for equal rights," 28 U.S.C. §1443(2) (emphasis added).  While the court purported to "adhere to" *Rachel*, 384 U.S. at 792, that case, as this Court has held, stands only for the proposition that "racial equality"—not sex equality—is section 1443's "sole subject," *Vlaming*, 10 F.4th at 309.  Nothing in *Rachel* (or *Vlaming*) authorizes or justifies a district court declining jurisdiction over a case removed under  section 1443 where removal is based on a law expressly enacted to protect racial equality, on the ground that the *specific section* of the law at issue does not expressly repeat the act's racial-equality purpose.  Those cases simply held that when a law contains *no* reference to racial equality (such as the First and

Fourteenth Amendments discussed in *Rachel*, 384 U.S. at 792, and the sex-equality law at issue in *Vlaming*, 10 F.4th at 309), it cannot justify removal under the refusal provision.

The court's "test" contradicts *Rachel*'s and *Vlaming*'s approach to assessing civil-rights removability. Each case considered the relevant law as a whole, not piecemeal. *Rachel* held that "the Civil Rights Act"—not any specific provision within it—is "clearly a law conferring a specific right of racial equality" because its lead provision (not every single provision) refers to "discrimination on the ground of race." *Id.* at 792-793. *Vlaming*, too, assessed section 1443's applicability by reference to the purpose of the invoked law (there, Title IX) in its entirety, not its isolated provisions. 10 F.4th at 309.

The consequences of the district court's narrow test underscore its infirmity. Congress designed the NVRA's 90-day quiet period to prohibit the systematic removal of voters "when the risk of disfranchising eligible voters is the greatest" and the voters targeted cannot "correct the State's errors in time to vote," *Arcia v. Florida Secretary of State*, 772 F.3d 1335, 1346 (11th Cir. 2014)—i.e., to prohibit a "procedure" that could "disproportionately harm … racial minorities," 52 U.S.C. §20501(a). Any implication that such a procedure must not disproportionately affect racial minorities (such that the board's refusal could not possibly advance the NVRA's racial-equality purpose) would ignore that "election administration

changes" in North Carolina have a "history of official discrimination" against the state's racial minorities "that dates back to the Nation's founding." *League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 244 (4th Cir. 2014) (quotation marks omitted). This Court should not do so.

*　　*　　*

The district court had original jurisdiction over both counts of plaintiffs' complaint under section 1441 and section 1443. Remanding count two violated the court's "virtually unflagging obligation" to exercise the jurisdiction that Congress has given it, *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976).

### C. At A Minimum, The District Court Should Have Exercised Supplemental Jurisdiction Over Count Two Under 28 U.S.C. §1367

Even if the district court had discretion to remand count two after dismissing count one (because it had supplemental rather than original jurisdiction over that count), it abused its discretion in doing so.

### 1. Plaintiffs forfeited any objection to the district court's exercise of supplemental jurisdiction over count two

As the DNC argued below, JA480, and in its stay motion, ECF No. 5 at 10, plaintiffs forfeited any objection to the exercise of supplemental jurisdiction by failing to argue in their "emergency" remand motion that the district court should discretionarily decline supplemental jurisdiction. *See* JA357. As courts have

recognized, "while Article III jurisdiction must be considered *sua sponte*, review of the discretionary aspect to supplemental jurisdiction under § 1367(c) is waived unless raised in the district court." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000-1001 (9th Cir. 1997) (citing *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996)); *see also, e.g.*, *Powers v. United States*, 783 F.3d 570, 576 (5th Cir. 2015) (declining "to excuse the parties' forfeiture by *sua sponte* disclaiming supplemental jurisdiction over the state-law claim"). Indeed, the Supreme Court has described as "a misreading of the law" the "view of pendent jurisdiction as something akin to subject matter jurisdiction that may be raised *sua sponte* at any stage." *Mayor of City of Philadelphia v. Educational Equality League*, 415 U.S. 605 (1974). A federal court's "exercise of its discretion under § 1367(c)," the Court has elaborated more recently, "is not a jurisdictional matter. Thus, the court's determination may be reviewed for abuse of discretion, but may not be raised at any time as a jurisdictional defect." *Carlsbad*, 556 U.S. at 640 (citation omitted).

Accordingly, the district court erred by declining supplemental jurisdiction *sua sponte*, and without addressing whether any argument that it should decline such jurisdiction had been forfeited. *See* JA601-602. Because plaintiffs did not object to supplemental jurisdiction in their district court remand motion, such an

objection "is forfeited on appeal." *Hicks v. Ferreyra*, 965 F.3d 302, 309 (4th Cir. 2020).

> **2.    The district court abused its discretion by declining to exercise supplemental jurisdiction over count two**

Even if any argument against supplemental jurisdiction were properly before the district court, that court abused its discretion in declining to exercise it. In deciding whether to exercise supplemental jurisdiction, courts must consider the "principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1988). When a district court declines supplemental jurisdiction without appropriately weighing those factors, courts of appeals regularly find an abuse of discretion. *See, e.g.*, *Ketema v. Midwest Stamping, Inc.*, 180 F.App'x 427, 428 (4th Cir. 2006); *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999); *Montano v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004). Applying these principles, the district court erred by not retaining its supplemental jurisdiction.

First, contrary to the district court's assertion (JA601-602), count two "do[es] not involve any 'novel or complex' issues of state law," *Batiste*, 179 F.3d at 227. Even if the Court were to conclude that count two is not fundamentally a HAVA claim, there is at the very least considerable overlap. Indeed, the DNC contends that resolving count two does not require an adjudication of any state-law issues at all. As explained—and as the district court acknowledged, JA575—count

two turns (at least in large part) on a federal question: whether HAVA requires de-registration of voters, or mandates provisional voting, based on alleged deficiencies in the collection of registration information, even this close to the election. *See supra* §II.A.1. Exercising supplemental jurisdiction would therefore *promote* fairness and judicial economy, by aligning resolution of two claims that ultimately turn on the same (federal) question—even if the Court concludes that count two also involves state-law issues. Moreover, although the district court proclaimed that count two "raised a 'novel' issue of North Carolina law," namely, "whether the State's noncompliance with state and federal election law can give rise to state constitutional injury," JA601, that conclusion was unexplained and unfounded. Because count two turns principally on a federal question, it does not actually "raise" any significant issue of North Carolina law. Regardless, as explained, the state constitutional claim was inadequately pleaded and is incoherent. *See supra* §II.A.1. "The absence of any difficult state-law questions" in count two "weighs heavily toward [the] conclusion that the district court abused its discretion in refusing to retain jurisdiction over the remaining claims." *Batiste*, 179 F.3d at 227.

Second, because the district court is familiar with plaintiffs' claims and has already expended significant judicial resources in the adjudication of plaintiffs' core arguments under HAVA, "further proceedings in the district court would

prevent redundancy and conserve scarce judicial resources." *Batiste*, 179 F.3d at 227. The parties completed a full round of motion-to-dismiss briefing, and the district court issued a 44-page opinion. A remand of count two—substantively identical to count one—sends the parties back where they started. Yet the district court did not even mention, let alone "account for[,] the amount of time and energy that has already been expended" on the near-identical claim in count one. *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995). Having heard the motion and independently evaluated the record, JA559; JA578, the district court—not the North Carolina superior court—is positioned to efficiently address count two. The district court's decision not to exercise supplemental jurisdiction was thus an abuse of discretion. As other circuits have recognized, "when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation … that court has abused its discretion under 28 U.S.C. § 1367." *Brookshire Brothers Holding v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *see also Montano*, 375 F.3d at 602 (district court's "order refusing to exercise supplemental jurisdiction over the state-law claims crossed over the line and amounted to an abuse of discretion" because it "was certain to produce more rather than less overall litigation, and a greater rather than a reduced strain on comity and judicial resources"); *Batiste*, 179 F.3d at 227 (the district

court abused its discretion by declining to exercise supplemental jurisdiction "[a]fter considering and weighing all the factors present in this case, and relying especially on [the appellate court's] conclusion that the district court was intimately familiar with the [plaintiffs'] claims"). Efficient resolution is especially important here, with the election well underway.

## III. COUNT TWO SHOULD BE DISMISSED

Count two should have been dismissed because it fails to state a claim as a matter of law. In exactly this procedural posture—where a district court "declined to exercise supplemental jurisdiction and remanded" a complaint's remaining count to state court—this Court has found that the count raised a federal question that should have been dismissed, vacated the district court's order, and remanded with instructions that the count be dismissed. *Bryan*, 377 F.3d at 427, 430. Multiple grounds for dismissal, all of which were raised below, JA383-384, warrant the same result here.

1. Because count two turns entirely on a violation of HAVA, *see supra* §II.A.1, it should have been dismissed for the same reasons the district court dismissed count one. Indeed, the court acknowledged that "the DNC persuasively argued that Count 2 involves the same disputed issues pertaining to HAVA as Count One." JA575. And the court recognized (JA589) that Congress has barred private parties from suing for violations of HAVA's specific list-maintenance

requirements that are at issue in this case, and that "all parties appear[] in agreement" about this, JA584.

In particular, HAVA authorizes the U.S. Attorney General to bring a civil action against any state that violates the relevant statutory provisions. 52 U.S.C. §21111. HAVA also requires states that receive federal funding to "establish and maintain State-based administrative complaint procedures" through which private individuals may complain of a HAVA violation, *id.* §21112—as Ms. Snow did in 2023, JA33, but plaintiffs did not. Because Congress's provision of "one method of enforcing a substantive rule … preclude[s] others," *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001), HAVA's text provides that only the Attorney General can sue to enforce its relevant provisions.

While some of HAVA's provisions may still be enforced if a party can show that "Congress intend[ed] to create a federal right" through them, *Colón-Marrero*, 813 F.3d at 15, the list-maintenance provisions here are not among them. Indeed, the Supreme Court held in one case that the Ohio Republican Party was "not … likely to prevail on the question whether Congress has authorized the District Court to enforce" HAVA's voter list-maintenance provisions "in an action brought by a private litigant." *Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 & n.* (2008) (per curiam) (quoting the provision now codified at 52 U.S.C. §21083(a)(5)(B)). At least two circuits have since reached the same conclusion,

i.e., that the list-maintenance requirements HAVA places on states may not be enforced privately to remove registered voters from the rolls.  *American Civil Rights Union v. Philadelphia City Commissioners* (*ACRU*), 872 F.3d 175, 184 (3d Cir. 2017); *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019).  The DNC knows of no case holding that a private party *can* enforce HAVA's list-maintenance requirements.

While courts have held other provisions of HAVA privately enforceable, they have done so pursuant to 42 U.S.C. §1983—in cases brought by or on behalf of voters whom a state threatens to deprive of individual rights guaranteed by HAVA, such as the entitlement not to be arbitrarily removed from voter rolls, *see Colón-Marrero*, 813 F.3d at 22, or "the right to cast a provisional ballot," *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) (per curiam). The complaint here never invokes section 1983, no doubt because that provision is inapplicable, as plaintiffs seek to *deny* voters the rights HAVA guarantees.  Congress has not authorized private entities (such as plaintiffs) to use HAVA's list-maintenance provisions as a sword against the very voters HAVA is meant to protect.

However plaintiffs label it, their claim is under HAVA, and that pleads them "out of court."  *ACRU*, 872 F.3d at 184.  "The lack of a private right of action in" the federal law "is fatal" and requires dismissal of *both* counts, *Bauer*, 8 F.4th at

299, because when a law "does not authorize private enforcement," plaintiffs cannot circumvent that legislative decision by invoking state law in state court, and any attempt to do so must be dismissed, *id.* at 295-296.

2.     Count two must independently be dismissed because plaintiffs did not plausibly allege a violation of HAVA or of the state constitution (assuming there is anything more to the state constitutional claim than HAVA requires).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 559 (2007).

Plaintiffs allege (JA31) that the State Board violated HAVA (specifically 52 U.S.C. §21083(a)(5)(A)) by accepting completed voter-registration applications that did not provide either a driver's license or partial social security number.  But as discussed (*see supra* p.10), the superseded version of the form about which plaintiffs complain explicitly instructed applicants:  "If you have a NC driver license or non-operator's identification number, provide this number.  If you do not have a NC driver license or ID card, then provide the last for digits of your social security number."  JA427.  Plaintiffs' actual grievance is thus (1) that the prior form was not *sufficiently* clear that this information was required, and (2) that as a result, some unspecified number of registrants *may* have submitted forms that lacked either number, such that the voter rolls are "potentially replete with ineligible voters." JA23.  These alleged facts—and plaintiffs offer nothing more—do not make it more

than rank speculation that any such ineligible registrations actually occurred. That is insufficient to "raise a right to relief above the speculative level," as *Twombly* requires, 550 U.S. at 555.

Plaintiffs' speculation aside, HAVA contains an exception for the provision of such information: "If an applicant for voter registration for an election for Federal office has not been issued a current and valid driver's license or a social security number," then "the State shall assign the applicant a number which will serve to identify the applicant for voter registration purposes." 52 U.S.C. §21083(a)(5)(A)(ii). The complaint contains *no* allegation that the State Board failed to assign an identifying number to any—let alone all—of the applicants who did not provide such information when registering with the prior form. Nor is there any allegation in the complaint that, for voters who register by mail, North Carolina fails to comply with 52 U.S.C. §21083(b), which requires that such voters provide identifying documents when they first vote.

If this Court concludes that count two encompasses something beyond a HAVA violation, then dismissal is required because plaintiffs have not plausibly pleaded a state constitutional claim. The North Carolina Constitution protects the "'right to vote *on equal terms*,'" meaning that "each vote must have the same weight." *Harper v. Hall*, 886 S.E.2d 393, 440 (N.C. 2023). But plaintiffs never alleged that their members' votes will be weighted differently than anyone else's

votes because of any of the conduct at issue here.  Their actual claim—that their members' votes will be *diluted* if the 225,000 North Carolinians they seek to disenfranchise are allowed to vote—is not cognizable, as "a claim of vote dilution allegedly based on one's affiliation with a political party does not raise a claim" under the North Carolina Constitution.  *Harper*, 886 S.E.2d at 440.  Plaintiffs still have not identified a single person among the 225,000 targeted voters who is *not* eligible to vote or the source of their information and belief of any such allegation (and could not do so when pressed at oral argument in the district court).  *See* JA658-662.  This underscores that plaintiffs' constitutional claim cannot stand on its own; their speculation that some voters are "potentially" ineligible to vote (JA40) is insufficient to state any direct constitutional claim.

3.     Count two must also be dismissed because federal law (both statutory and constitutional) bars plaintiffs' requested last-minute voter purge, whether done by removing voters from the rolls or forcing them to vote only provisionally.

a.     As noted, the NVRA provides that states "shall complete, not later than 90 days [before] a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters."  52 U.S.C. §20507(c)(2)(A).  HAVA expressly incorporates this rule.  *Id.* §21083(a)(2)(A)(i).  Yet plaintiffs filed their complaint during this 90-day no-removal period, JA22—and at this point, any

relief granted would come no more than eight days before the November 5 election. And there is no question that plaintiffs seek to do exactly what the NVRA prohibits during that 90-day period: "systematically remove the names of ineligible voters from the official lists of eligible voters," 52 U.S.C. §20507(c)(2)(A). In this litigation, plaintiffs have not brought individualized challenges against any of the 225,000 registered voters that are "potentially ineligible," JA40. Rather, they request "a court-approved plan" under which the State Board must "identify[] *all* ineligible registrants and remov[e] them from the state's voter registration lists." JA40 (emphasis added). Such a plan falls squarely within the scope of the NVRA's broad phrase "any program." Hence, while plaintiffs ask that voters be removed from the rolls "consistent with … federal law," *id.*, that cannot now be done in the manner they seek (not least because of how long plaintiffs waited to bring this action).

If more were needed, the NVRA requires that any "State program or activity" to de-register voters be "uniform, nondiscriminatory, and in compliance with" the Voting Rights Act. 52 U.S.C. §20507(b)(1). That requirement applies both to a "program" to purge voters from the rolls before they vote or an "activity" to purge them after they are made to cast provisional ballots. It is violated when a method for purging voters is overinclusive, "identif[ying] many properly registered citizens as potential noncitizens." *United States v. Florida*, 870 F.Supp.2d 1346,

1350 (N.D. Fla. 2012). HAVA likewise commands that states maintain their voter lists "in a manner that ensures that[] … only voters who are not registered or who are not eligible to vote are removed." 52 U.S.C. §21083(a)(2)(B)(ii). Plaintiffs' requested relief would be overinclusive and error-prone, because not every applicant who failed to provide either a driver's license number or a partial social security number is ineligible to vote. Indeed, plaintiffs have conceded the point, alleging that the voters they have targeted for removal are only "*potentially ineligible*." JA40 (emphasis added). Plaintiffs' requested relief would thus create the very risk of erroneous disenfranchisement that Congress prohibited.

b. Removing registered voters from North Carolina's rolls (or disqualifying their already-cast ballots) without providing them notice and an opportunity to be heard would violate their constitutional right to procedural due process, *see* U.S. Const. amend. XIV, §1. The 225,000 voters that plaintiffs target submitted the proper version of North Carolina's registration form, swore under oath that they were eligible voters, had their eligibility verified by election officials, and were told that they are registered to vote in all future elections. They cannot be told now—on the eve of a presidential election, when there would almost certainly be no time to correct any mistakes—that they will be removed from the rolls or prohibited from casting a regular ballot.

Such removals would violate due process because they would constitute "state action" that infringed "'a cognizable liberty … interest'" (the right to vote) using "'constitutionally inadequate'" procedures, *Kendall v. Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011).  Courts evaluating whether a procedure is "constitutionally" inadequate, *id.*, consider three factors: (1) "the private interest that will be affected"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Here, all three factors support finding a due-process violation.

As to the first factor, "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws."  *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964); *see also North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204, 241 (4th Cir. 2016).  But if this lawsuit were to proceed, voters would risk being improperly removed from the rolls or being made to cast provisional ballots the state may not count.  Either injury threatens the right to vote, which includes voters' right to "cast their ballots" (which removal from the rolls would prohibit) and "have them counted" (which being made to cast a provisional ballot threatens). *United States v. Classic*, 313 U.S. 299, 315 (1941).

As to the second factor, plaintiffs do not allege that any of the 225,000 registered voters at issue are ineligible to vote or that the state failed to verify their eligibility, and so they each risk being erroneously deprived the franchise. Even if one posits (without basis) that some of these voters are not eligible, additional procedures—such as providing voters notice and an opportunity to be heard before removal—would reduce the risk of any inaccurate determinations, because voters who are in fact eligible would be able to demonstrate their eligibility. *See Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145-146 (4th Cir. 2018). That is in fact the minimum process due to them. *E.g.*, *Jones v. Governor of Florida*, 975 F.3d 1016, 1049 (11th Cir. 2020).

As to the third factor, there is no argument of unreasonable burden on the government because state law already requires providing notice and an opportunity to be heard: North Carolina's challenge process involves voters receiving notice and a hearing before being de-registered based on a challenge from another voter. *See* N.C. Gen. Stat. §§163-85, 163-86.[3]

---

[3] For the reasons given in the text, removal from the voter rolls without notice and an opportunity to be heard would still violate due process if, instead of the *Mathews* factors, the Supreme Court's *Anderson-Burdick* framework applied here. *See generally Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

In another recent case involving baseless allegations of voting by non-U.S. citizens, the chief justice of the Arizona Supreme Court rejected an attempt (similar to plaintiffs' here) to deny nearly 100,000 voters the ability to vote in state and local elections because they supposedly had not provided documentary proof of U.S. citizenship when they registered to vote. *See Richer v. Fontes*, 2024 Ariz. LEXIS 263, at *8 (Ariz. Sept. 20, 2024) (Timmer, C.J.). The chief justice was "unwilling" to "disenfranchise voters en masse" when doing so "is not authorized by state law and would violate principles of due process." *Id.* That was "particularly true" given that (1) it was a "state administrative failure" that led to voters being registered without the requisite proof of citizenship, and (2) there was "so little time remaining before the beginning of the 2024 General Election." *Id.* at *7. The same conclusion is warranted here.

4.      Finally, equitable considerations—the doctrine of laches and the *Purcell* principle—independently require dismissal.

Laches precludes equitable relief where (1) there has been a "lack of diligence by the party against whom the defense is asserted," and (2) granting relief despite that delay would "prejudice … the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282 (1961); *accord, e.g.*, *EEOC v. Propak Logistics, Inc.*, 746 F.3d 145, 149 n.5 (4th Cir. 2014). The "greater the delay, the less … prejudice required to show laches, and vice versa." *White v. Daniel*, 909

F.2d 99, 102 (4th Cir. 1990). Here, the delay and the prejudice each easily suffice to trigger laches. Almost a *year* before appellees filed their lawsuit, the State Board issued a public decision resolving the very complaint about the state's voter-registration form that this lawsuit brings. *See* JA33. Yet plaintiffs waited many months, not suing until August 23 of this year—scarcely two weeks before ballots were scheduled to be distributed throughout North Carolina, *see* N.C. Gen. Stat. §163-227.10(a). That is far longer than the delay of four months that this Court has held to constitute a lack of diligence. *See Perry v. Judd*, 471 F.App'x 219, 224 (4th Cir. 2012). And as this Court recognized in the same case, excusing such delay will only "encourage [others] to wait until the last minute to bring [similar] challenges." *Id.* at 225. The prejudice here, too, is significant: Such late-stage upheaval would hinder the DNC's ability to ensure votes for its candidates are timely cast and counted, and that its voters are not kept away from the polls.

For similar reasons, the *Purcell* principle independently requires dismissal. The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican National Committee v. Democratic National Committee*, 589 U.S. 423, 424 (2020) (per curiam). "Court orders affecting elections" tend to "result in voter confusion and consequent incentive to remain away from the polls" if they are made shortly before an election occurs. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per

curiam).  This is a "bedrock tenet of election law: When an election is close at hand, the rules of the road must be clear and settled," *Merrill v. Milligan*, 142 S.Ct. 879, 880 (2022) (Kavanaugh, J., concurring), especially in a general election year, *see, e.g., Merrill v. People First of Alabama*, 141 S.Ct. 25, 25 (2020); *Andino v. Middleton*, 141 S.Ct. 9, 9-10 (2020).

All this is known to plaintiffs.  The Republican Party or a state affiliate has invoked *Purcell* in case after case this year, including as early as *six months* before the election, JA440, and as a defense *against* the voter purge contemplated in Arizona, *see supra* p.3 n.1; JA460.  As the Arizona Republican Party put it over a *month* ago, "given the proximity to the election, …. U.S. citizen voters who have … consistently participated in state elections without issue are likely to show up at their polling place on November 5 only to learn that they have been disenfranchised by a state government clerical error of which they had no prior knowledge."  JA470.  That concern—which North Carolina law also reflects, *see Pender County v. Bartlett*, 649 S.E.2d 364, 376 (N.C. 2007), *aff'd on other grounds sub nom. Bartlett v. Strickland*, 556 U.S. 1 (2009)—calls for dismissal. Many of the 225,000 registered voters plaintiffs target may have already voted (on non-provisional ballots).  "The election is not merely 'close[ in time],' or even 'imminen[t]'—it is happening right now."  *Pierce v. North Carolina State Board of Elections*, 97 F.4th 194, 227 (4th Cir. 2024).  The targeted voters, who "'deserve

clarity' about their elections," *id.* at 229 (quoting *Wise v. Circosta*, 978 F.3d 93, 96 (4th Cir. 2020) (en banc)), have been registered, and that state action "establishes the status quo" that cannot now be disrupted, *id.* at 209 (quoting *Wise*, 978 F.3d at 98). To change the rules now, after the state has assured voters (perhaps for years in some cases) that they are eligible to vote, or to threaten not to count their ballots, could sow confusion and chaos, undermining public confidence in the election. *Purcell* and its progeny forbid that outcome.

\*   \*   \*

Plaintiffs' last-minute gambit to sow election chaos with a meritless complaint should be promptly rejected outright, so that North Carolinians who have long been registered to vote may rest assured in exercising one of our most sacred constitutional rights. The district court had an obligation to exercise jurisdiction over count two of plaintiffs' complaint and should be required to dismiss that count on the same ground it dismissed count one or, alternatively, because count two seeks relief that cannot be granted.

## CONCLUSION

The district court's remand of count two should be reversed, its judgment should be vacated, and it should be instructed to dismiss count two. Alternatively, the district court should be instructed to consider the merits of the arguments for dismissal of count two.

October 23, 2024

Respectfully submitted,

/s/ Seth P. Waxman

JIM W. PHILLIPS, JR.
SHANA L. FULTON
ERIC M. DAVID
WILLIAM A. ROBERTSON
JAMES W. WHALEN
BROOKS, PIERCE, MCLENDON
    HUMPHREY & LEONARD, LLP
150 Fayetteville Street
1700 Wells Fargo Capitol Center
Raleigh, N.C. 27601
(919) 839-0300

SETH P. WAXMAN
DANIEL S. VOLCHOK
CHRISTOPHER E. BABBITT
GARY M. FOX
JOSEPH M. MEYER
JANE E. KESSNER
NITISHA BARONIA
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
(202) 663-6000
seth.waxman@wilmerhale.com

## CERTIFICATE OF COMPLIANCE

The foregoing complies with the type-volume limitation of Local Rule 32(a)(7)(B) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the foregoing contains 11,341 words, excluding the portions exempted by Rule 32(f).

/s/ Seth P. Waxman
SETH P. WAXMAN


## CERTIFICATE OF SERVICE

On this 23rd day of October, 2024, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ Seth P. Waxman
SETH P. WAXMAN